UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| CHARLYN D. MURRAY, | **REPORT AND RECOMMENDATION** |
| Plaintiff, | |
| | 08-CV-1143 |
| V. | (GLS/VEB) |
| SECRETARY OF HEALTH AND HUMAN SERVICES, Michael Leavitt, | |
| Defendant. | |

---

## I. INTRODUCTION

Plaintiff Charlyn D. Murray applied for Medicare Part B coverage in November of 2006. The Secretary of Health and Human Services concluded that, due to the timing of Plaintiff's application, she would not be entitled to benefits until February of 2007. In the interim, Plaintiff incurred large medical bills related to pancreatic cancer treatment. Plaintiff, acting *pro se*, commenced this action on October 23, 2008, seeking judicial review of the Secretary's determination pursuant to 42 U.S.C. § 405 (g).

On August 24, 2009, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 20).

## II. BACKGROUND

The relevant factual and procedural history may be summarized as follows: In June

of 2006, Plaintiff suffered an injury that caused her to have swollen legs, swollen feet, and aching ankles. (T at 166).[1]  Around the same time, she began experiencing pain in her stomach and diaphragm, accompanied by dizziness and fatigue. (T at 166).  In September 2006, Plaintiff tripped and fell, injuring her ankle and toe.  She received medical treatment, but diagnostic testing did not reveal the underlying cause of her fatigue and swelling. (T at 166).  Plaintiff turned sixty-five (65) years old on September 21, 2006. (T at 168).

On November 5, 2006, Plaintiff was taken to the emergency room at Albany Medical Center complaining of sharp stomach and diaphragm pain. (T at 166).  An abdominal scan revealed a series of tumors in her pancreas and liver. (T at 166).  Surgery was performed that evening to remove a portion of Plaintiff's pancreas and the majority of the tumors. (T at 166).  Plaintiff developed a serious infection following surgery and remained hospitalized for several weeks. (T at 166).

On November 8, 2006, while Plaintiff was recovering from surgery, her husband, Robert B. Murry telephoned the Social Security Administration office in Schenectady, New York and requested that Plaintiff be enrolled in Medicare Parts A and B. (T at 103).  A follow-up letter from the Social Security Administration confirmed the telephone contact and scheduled an appointment for November 27, 2006. (T at 105).

Plaintiff was discharged from the hospital on November 25, 2006. (T at 166).  On November 27, 2006, she met with a Social Security representative named Mark Brewer in the Schenectady Social Security office. (T at 103).  Brewer advised Plaintiff that Medicare Part A benefits would be effective immediately, but that Part B benefits would not be

---

[1]Citations to "T" refer to the Administrative Transcript.  (Docket No. 12).

available until February of 2007. (T at 49, 103).

A follow-up letter from the Social Security Administration confirmed that Plaintiff was entitled to Medicare hospital insurance beginning September 2006 and medical insurance starting in February 2007. (T at 171).  Plaintiff requested reconsideration of that determination via a letter dated January 30, 2007. (T at 166-67).  The Social Security Administration denied Plaintiff's request on April 22, 2007. (T at 61-62).

On November 21, 2007, Plaintiff requested a hearing by an Administrative Law Judge ("ALJ"). (T at 146).  Although Plaintiff's hearing request was untimely under 42 C.F.R. 405.1002 (a)(1), Joseph Pastrana, the ALJ, determined that Plaintiff had good cause for the late filing and conducted a hearing on the merits of her claim. (T at 21).  The hearing was held in Albany, New York on April 3, 2008.  Plaintiff appeared and testified along with her husband. (T at 184).

On April 22, 2008, the ALJ issued a decision confirming that Plaintiff's period of entitlement to Medicare Part B benefits began on February 1, 2007. (T at 26).  Plaintiff requested review by the Medicare Appeals Council ("MAC"). (T at 11).  The MAC affirmed the ALJ's decision on August 20, 2008. (T at 3-4).

Plaintiff, acting *pro se* commenced this action on October 23, 2008, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1).  The Secretary filed a Memorandum of Law in support of Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure on April 30, 2009. (Docket No. 13).  Plaintiff filed a Brief on August 20, 2009.  (Docket No. 18).

For the reasons that follow, it is respectfully recommended that the Secretary's motion be granted.

### III. DISCUSSION

**A.     Medicare Background**

Medicare is "the federal government's health insurance plan for the elderly and certain persons with disabilities" <u>Matthews v. Leavitt</u>, 452 F.3d 145, 147 (2d Cir. 2006). Medicare Part A "automatically provides coverage to qualifying individuals for inpatient treatment and related services." <u>Id.</u> (citing <u>K&A Radiologic Tech. Servs., Inc. v. Comm'r of Dep't of Health of the State of New York</u>, 189 F.3d 273, 276 (2d Cir.1999); 42 U.S.C. §§ 1395c to 1395i-5 (statutory provisions governing Medicare Part A)).

"Medicare Part B, which covers visits to doctors and certain other outpatient treatment, is 'voluntary program offering supplemental insurance coverage for those persons already enrolled in the Medicare 'Part A' program.'" <u>Matthews</u>, 452 F.3d at 147 (quoting <u>Furlong v. Shalala</u>, 238 F.3d 227, 229 (2d Cir.2001) and citing 42 U.S.C. §§ 1395j to 1395w-4 (statutory provisions governing Medicare Part B)).

This case concerns coverage under Part B because Plaintiff is seeking reimbursement for outpatient services related to the diagnosis, treatment, and monitoring of her pancreatic cancer.

Individuals, like Plaintiff, who are age 65 or older and have received social security retirement benefits are automatically entitled to Medicare Part A benefits without the need for an enrollment application. 42 C.F.R. §406.6.

However, to obtain Part B coverage, individuals must enroll in the plan during an

4

applicable "enrollment period" and must thereafter pay required premiums. 42 U.S.C. §1395p. There are two enrollment periods. The initial enrollment period is a seven-month period that begins three months prior to the month in which the person turns 65 or otherwise becomes eligible for Medicare. The initial enrollment period ends three months after the individual became eligible for Medicare. 42 U.S.C. § 1395p(d). The general enrollment period begins on January 1st and ends on March 31st each year. 42 U.S.C. §1395p(e).

The effective date of an individual's Part B coverage depends on what month they enrolled. The dates are designed to encourage early enrollment. Thus, a person who registered during the first three months of the initial enrollment period, *i.e.* before they are actually entitled to benefits, is entitled to benefits beginning with the first month of eligibility. A person who enrolls in the fourth month is entitled to benefits beginning in the following month. An individual who enrolls in the fifth month of the initial enrollment period is entitled to benefits starting in the second month after the month of enrollment. A person who enrolls in either the sixth or seventh month of the initial enrollment period becomes entitled to Part B benefits in the third month following the month of enrollment. 42 C.F.R. § 407.25.

In this case, Plaintiff turned 65 on September 21, 2006, and became eligible for Medicare benefits. Thus, her initial enrollment period began three months before that, on June 21, 2006. Plaintiff applied for benefits in November 2006, the sixth month of her initial enrollment period. As such, the Secretary found that she was entitled to benefits starting in February 2007, the third month following the month of enrollment. As discussed below, Plaintiff challenges this calculation.

**B.	Legal Standard**

The standard of review of the Secretary's determination is set forth in 42 U.S.C. §405 (g), which applies to agency determination under the Medicare program by operation of 42 U.S.C. § 1395ff (b)(1)(A)**.**  Under that standard, this Court may not determine *de novo* whether the agency's findings were correct.  Rather, the question before this Court is whether the determination was supported by substantial evidence.

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the agency's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the agency's's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [agency's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the agency's determination considerable deference, and may not substitute "its own judgment for that of the [agency], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

"[T]he claimant bears the burden of proving her entitlement to Medicare coverage." Keefe ex rel. Keefe v. Shalala, 71 F.3d 1060, 1062 (2d Cir.1995).

**C.     Analysis**

As noted above, the Secretary determined that Plaintiff became eligible for Medicare Part B benefits in February 2007.  Plaintiff challenges this determination on several grounds, each of which will be addressed in turn.

First, she contends that the literature provided by the Social Security Administration did not sufficiently warn her concerning the consequences of failing to apply for Part B benefits before turning 65.  In May of 2005, Plaintiff received a "Social Security Statement" from the Social Security Administration, which contained the following statements regarding Medicare: "You have earned enough credits to qualify for Medicare at age 65.  Even if you do not retire at age 65, be sure to contact Social Security three months before your 65th birthday to enroll in Medicare." (T at 97).  "Even if you don't plan to receive benefits because you'll continue working, you should sign up for Medicare three months before reaching age 65 regardless of when you reach full retirement age.  Otherwise, your Medicare medical insurance (Part B) could be delayed and you could be charged a higher premium." (T at 101).

Plaintiff argues the language used in the Social Security Statement was not forceful enough in warning about the consequences of failing to enroll prior to turning 65.  In particular, Plaintiff notes that the statement simply indicated that she "should" enroll in Medicare three months prior to reaching age 65 and that Part B benefits "could" be delayed if she did not enroll prior to her 65th birthday.  Plaintiff contends that the Statement should have used stronger language – telling the recipent that they "must" enroll or otherwise they "would" face a benefit delay.

The ALJ considered this argument and noted that he could "understand that the

language was not as strong as [Plaintiff] desired." (T at 78). However, the ALJ concluded that the use of imperative language would have been improper because Medicare Part B is a voluntary program and the government has no authority to command a citizen to enroll. (T at 78). This Court shares the ALJ's assessment that "the literature could certainly be clearer with regard to the consequences of signing up at certain times." (T at 79). However, this Court must and does find that Plaintiff is not entitled to relief on this basis. The statement provided by the Social Security Administration does not contain any inaccurate or misleading information. It specifically recommends, in two places, that the recipient apply for Medicare three months before his or her 65th birthday. (T at 97, 101). The statement warns that a delay in benefits may result from failing to apply for Medicare during that time period. (T at 101). The statement also provides a website and telephone number for more information concerning Medicare. (T at 99).

Even accepting Plaintiff's premise that the language used might have been more categorical, the language used was plainly accurate and, at a minimum, sufficient to advise a citizen of the possible consequences of an enrollment delay. In any event, Plaintiff has not provided any authority to even arguably suggest that this Court can or should reverse the ALJ's decision or otherwise disturb the agency's determination in this regard.

Second, Plaintiff contends that (1) the initial enrollment period should be measured from her actual birthday, rather than from the 1st of the month, (2) that the enrollment period should be deemed to have begun on July 21st, and (3) that she should be deemed to have enrolled on November 8th, when her husband phoned the local Social Security office. Under this analysis, if Plaintiff's initial enrollment period began on July 21st, and if she was deemed to have applied on November 8th, her application would have been filed in the

fourth month of her initial enrollment period. In that case, under 42 C.F.R. § 407.25, she would have been entitled to benefits beginning in December 2006 (the month after her application), rather than February 2007.

The ALJ rejected this argument, noting that the eligibility period is measured from the "first day of the first month" in which the claimant is entitled to benefits. 42 C.F.R. § 406.10 (b)(1); § 407.14 (a). (T at 78). In this case, Plaintiff turned 65 on September 21st and thus, was eligible for benefits on the first day of that month. Her initial enrollment period began three months prior to that, *i.e.* on June 1, 2006. Plaintiff has offered no authority to even arguably suggest that the ALJ's interpretation of the applicable law was erroneous.

Plaintiff's suggestion that her initial enrollment period began in July (rather than June 2006) is likewise unavailing. Plaintiff relies upon correspondence received from the Social Security Administration in or around April of 2007, in which the Administration indicated that Plaintiff's "initial enrollment period" was "July 2006 to December 2006." (T at 61). Although the Secretary concedes that this statement was in error (Docket No. 13, at p. 9 n.1, p. 13), Plaintiff cannot show that she relied upon the statement, which was made *after* the events in question. Moreover, the controlling authority for measuring the initial enrollment period is the applicable law, rather than any *post hoc* correspondence. Under that authority, as outlined above, the initial enrollment period began in June 2006.

Lastly, Plaintiff contends that she should be granted leniency and that the technical requirements of the applicable law be waived under the circumstances. "Equitable relief, including establishment of a special initial enrollment period or a special general enrollment

9

period, as well as adjustment of premiums, is available to a Medicare Part B applicant if the applicant meets the statutory or regulatory requirements for such relief." Bolognese v. Leavitt, No. 06-CV-0495, 2008 WL 2562000, at *4 (W.D.N.Y. June 26, 2008) (citing 42 U.S.C. § 1395p(h); 42 C.F.R. § 407.32).

Equitable relief is available for a claimant whose "nonenrollment in [Medicare Part B] is unintentional, inadvertent, or erroneous and is the result of the error, misrepresentation, or inaction of an officer, employee, or agent of the Federal Government, or its instrumentalities...." 42 U.S.C. § 1395p(h). See also 42 C.F.R. § 407.32.

In this case, the ALJ correctly determined that Plaintiff's delayed enrollment in Medicare Part B was not attributable to any error, misrepresentation, or inaction of an officer, employee, or agent of the Federal Government or its instrumentalities. For the reasons stated above, this Court finds that there is substantial evidence in the record to support the ALJ's determination in this regard. Plaintiff's suggestions that she acted with reasonable diligence under extraordinary circumstances, while understandable, are not sufficient to support a waiver under the governing law. Although this Court certainly has sympathy for Plaintiff and her extremely difficult ordeal and regrets this outcome, where the law is clear, as it is here, it must be applied without passion or prejudice.

## IV. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendant's Motion for Judgment on the Pleadings be GRANTED and that this action be dismissed.

          Respectfully submitted,

*[signature]*

Victor E. Bianchini
United States Magistrate Judge

Dated:   November 23, 2009

    Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.**

Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

November 23, 2009

/s/ Victor E. Bianchini
Victor E. Bianchini
United States Magistrate Judge